UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JAMES TRAVIS ADKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-525 |
| | ) | |
| MORGAN COUNTY, TENNESSEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff James Travis Adkins brought this civil rights case, 42 U.S.C. § 1983, for damages, alleging that he was denied medical care for serious medical needs, while he was incarcerated in the Morgan County jail in Wartburg, Tennessee [Doc. 35, Second Am. Comp.]. This matter is before the Court on a motion for partial final judgment filed by two Defendants, Lucinda Heidel and Southern Health Partners, Inc. ("SHP") [Doc. 84]. The basis of the motion is that the parties reached an agreement to settle and resolve their claims against one another and that they signed a settlement agreement to that effect [*Id.*]. Plaintiff opposes the motion and seeks to have the Court set aside the settlement agreement [Doc. 88, sealed]. For reasons below, the Court will **DENY** Plaintiff's request and **GRANT** Defendants' dispositive motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, Plaintiff sued Defendant Heidel, a licensed practical nurse employed by SHP, for being deliberately indifferent to his back and leg pain—Plaintiff later was diagnosed as having a spinal infection—in June and July of 2016 [*Id.* at ¶¶ 41-42]. Plaintiff sued Defendant SHP, Defendant Heidel's corporate employer, for its failure to train Defendant Heidel to respond

appropriately to inmates' serious medical needs and not to respond to such needs with deliberate indifference [*Id.* at ¶¶ 7, 41-42]. Plaintiff sought ten million dollars ($10,000,000.00) in compensatory and punitive damages from Defendants [*Id.* at 8].

After the parties were ordered to participate in mediation, the mediator reported to the Court that Plaintiff had settled his case against Defendants Heidel and SHP [Doc. 83]. Defendants Heidel and SHP filed a motion for partial final judgment based on that settlement [Doc. 84], supported by a copy of the settlement agreement [Doc. 86, sealed].[1] Plaintiff responded in objection to the motion and asked the Court to set aside the settlement agreement [Doc. 88, sealed].

Plaintiff attacks the validity of the settlement agreement on four bases [Doc. 88]. First, Plaintiff argues that there was no meeting of the minds with respect to a material issue. Plaintiff points to an exchange of emails before and after the signing of the settlement agreement as objective acts by Plaintiff that demonstrate the lack of any meeting of the minds. Plaintiff next suggests that there was a mutual mistake as to a term in the settlement agreement. Both the mutual mistake as well as the lack of meeting of the minds arguments, as the Court interprets those arguments, center on what the mediator communicated to Plaintiff regarding his (the mediator's) understanding of the settlement.

---

[1] Sections in the settlement agreement were numbered 1, 2, 3, 4, and 11, and section 11 ended in mid-sentence. Because sections 5 through 10 and part of section 11 appeared to be missing, the Court ordered the parties to file a sealed copy of the mediated settlement agreement in its entirety [Doc. 102]. The unsigned settlement agreement filed in response to that order replicates the signed agreement, except that the unsigned agreement contains eight words omitted from section 11 of the signed settlement agreement [Doc. 104, sealed]. That eight-word phrase refers to a federal evidentiary rule—a rule that is incorporated in the local rules governing mediation. *See* E.D. Tenn. L.R. 16.4(h). Under these circumstances, the Court regards that phrase as immaterial to the enforceability of the settlement agreement.

The third problem pointed to by Plaintiff is that the settlement agreement is ambiguous [Doc. 88]. The ambiguity, so argues Plaintiff, stems from obligations imposed on Defendants' counsel to prepare a formal mutual release of all claims and on the parties to execute the agreement. Finally, so argues Plaintiff, there was no consideration for the dismissal of his claims, and Plaintiff reasonably expected that such details would be included in the formal settlement agreement [*Id.*]. Defendant replied to Plaintiff's response and request to set aside mediated settlement and not surprisingly objects to Plaintiff's request [Doc. 90, sealed].

On April 25, 2018, the motion for partial final judgment came before the Court for a hearing [Docket Entry of April 13, 2018]. For reasons set forth below, the Court will deny Plaintiff's request to set aside the settlement agreement, will enforce the signed settlement agreement as written, and will grant the motion for partial final judgment filed by Defendants Heidle and SHP.

## II.  LAW AND ANALYSIS

### A.  Enforcement of Settlement Agreements

"A federal court has the inherent authority and equitable power to enforce agreements in settlement of litigation before it." *Rodgers v. Gorman-Rupp Co.*, 55 F. App'x 319, 320 (6th Cir. 2003) (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) ("This circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it...." (quoting *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282–83 (6th Cir. 1986)). This inherent power stems "from the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities,* 141 F. App'x 437, 443 (6th Cir. 2005).

"[O]nce a settlement is reached, it is the party challenging the settlement who bears the burden to show that the settlement contract was invalid based on fraud or mutual mistake." *Id.*

Before a district court enforces a settlement, it "must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001). "[A] settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment." *Id.* at 650 (citing *Clinton St. Greater Bethlehem Church v. City of Detroit*, 484 F.2d 185, 189 (6th Cir. 1973)). Such a judgment "is in the nature of a judgment by consent." *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 621 (6th Cir. 1973).

The Court looks to state law of contracts to resolve disputes as to the enforcement of settlement agreements. *Cuyahoga Valley Ry. Co. v. U. S. Bank Tr. Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." (quoting *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011)); *see also Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000) (observing that "[a] compromise and settlement agreement is merely a contract between the parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law").

**B.     State Law (Contracts)**

As noted, Plaintiff's attack on the settlement agreement is four-pronged (i.e., no meeting of the minds, mutual mistake, ambiguity, and no consideration).

**1.     Meeting of the Minds**

To have a meeting of the minds, the parties must mutually assent to a contract. *Ogle v. Duff*, No. E201601295COAR3CV, 2017 WL 2275801, at *3 (Tenn. Ct. App. May 24, 2017). Whether a meeting of the minds has occurred is viewed objectively and entails looking at the four

corners of the agreement or contract at issue. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("[Plaintiff] asserts that it simply misunderstood the nature of the contract and the document it signed. An elementary precept of contract law, however, is that a court will not look beyond the four corners of a contract or to the parties' intention when the language of the contract is clear.") (citations omitted). While the intent of the parties at the time of the settlement agreement controls the construction of the agreement, *Planters Gin Co. v. Fed. Compress and Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2001), "[t]he intent of the parties is presumed to be that specifically expressed in the body of the [settlement agreement]." *Id.*; *see also Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007) (noting the existence of a presumption that a written contract signed by a party contains his intentions and his assent to be bound to the its terms). Only if the agreement is ambiguous will a court explore the intent of the parties. *Coleman v. St. Clair*, No. 5, 1991 WL 4254, at *4 (Tenn. Ct. App. Jan. 22, 1991) (explaining that "[t]he parties' interpretation . . . can only be adopted if the language in the instrument is ambiguous or uncertain").

### 2. Mistake

To avoid a settlement agreement for a mistake, the mistake must be "innocent, mutual, and material to the transaction." *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010). In the case of a mutual mistake, "the intent of both parties must be clear and must be the same." *Peatross v. Shelby Cnty.*, No. W2008-0238-5COA-R3-CV, 2009 WL 2922797, at *4 (Tenn. Ct. App. Sept. 10, 2009) (quoting *Hunt v. Twisdale*, No. M2006–01870–COA–R3–CV, 2007 WL 2827051, at *8 (Tenn. Ct. App. Sept. 28, 2007)). Where a unilateral mistake of fact or law is alleged, the mistake must be "induced by the other party's fraudulent misrepresentation." *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 476 (6th Cir.

2014) (citing *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006)); *see also Peatross*, 2009 WL 2922797, at *5 (finding that a term of a contract to be subject to modification "where only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud").

### 3. Ambiguity

Ambiguity in a contract is determined based on the language used therein; if the language "is susceptible of more than one reasonable interpretation the language is ambiguous." *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001). If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Planters Gin Co.*, 78 S.W.3d at 890. Where the language in a settlement agreement "is plain and unambiguous" a court's only role is "to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves." *Westfield Ins. Co. v. Rainey Contracting, LLC*, No. 2:15-CV-247, 2017 WL 2484273, at *4 (E.D. Tenn. June 8, 2017) (quoting *Petty v. Sloan*, 277 S.W.2d 355, 358-599 (1955)).

### 4. Consideration

Consideration in a settlement agreement does not require "that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration." *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999) (quoting *Palmer v. Dehn*, 198 S.W.2d 827, 828 (1946)). "Consideration [exists] when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do." *Id.* at 877 (citation omitted). The existence of consideration for a settlement agreement can be determined on the face of the agreement. *See Piccadilly Square v.*

6

*Intercontinental Const. Co.*, 782 S.W.2d 178, 183 (Tenn. Ct. App. 1989) (explaining that any doubt as to consideration can be resolved by examining the settlement agreement). Mutual promises have been found to be "sufficient consideration." *Bratton v. Bratton*, 136 S.W.3d 595, 602 (Tenn. 2004).

**C.     State Law (Release)**

Under Tennessee law, "a release is a contract" so that rules of constructions that apply to contracts likewise apply to releases. *Richland Country Club v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). "[T]he scope and extent of [a] release depends on the intent of the parties as expressed in the instrument." *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974). "In getting at this intention [courts] . . . do not determine what the state of the mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written," *Petty*, 277 S.W.2d at 360, "in the light of all of the surrounding facts and circumstances under which the parties acted." *Richland Country Club*, 832 S. W. 2d at 557 (citation omitted).

"[I]n matters of unambiguous written instruments absent proof of fraud, misrepresentation, undue influence and situations of like character, the unspoken subjective intent of a party is not relevant." *Peatross*, 2009 WL 2922797, at *4 (citation omitted). "A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release." *Cross*, 517 S.W.2d at 752.

**D.     Analysis**

**1.     Defining the issue**

7

First, to clarify the issue before the Court, there is no dispute about a material term in the settlement agreement. Instead, the dispute involves a material term that, according to Plaintiff, was omitted from the settlement agreement. In other words, Plaintiff claims that the settlement agreement itself does not contain all terms he reasonably understood it to contain.

   **2.   Meeting of the Minds**

As noted, a meeting of the minds is tantamount to mutual assent. *See Ogle*, 2017 WL 2275801, at *3; *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016–00089–COA–R3–CV, 2016 WL 7166408, at *7 (Tenn. Ct. App. Dec. 8, 2016). One means of showing assent to be bound by the contract terms is signing the contract. *Moody Realty Co.*, 237 S.W.3d at 674. There is a conclusive presumption that a party who signs a contract knows its contents, absent some kind of fraud. *Broadnax v. Quince Nursing & Rehab. Ctr., LLC*, No. W2008-02130-COA-R3-CV, 2009 WL 2425959, at *8 (Tenn. Ct. App. Aug. 10, 2009) (citing *Giles v. Allstate Ins. Co.*, Inc., 871 S.W.2d 154 (Tenn. Ct. App. 1993)); *Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007) (observing that parties to a contract have a legal duty "to learn the contents and stipulations of a contract before signing it").

Here, Plaintiff and his counsel signed the settlement agreement, as did Defendants and their counsel. There are no allegations of fraud on the part of Defendants. The Court, thus, presumes that Plaintiff knew the contents of the settlement agreement, including all its terms. The signing of the settlement agreement, therefore, shows that Plaintiff assented to its terms and that he and Defendants had a meeting of minds. *See Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007) (noting that the function of a signature is to manifest assent); *see also Cosper v. United States*, No. 1:16-CV-320-PLR-SKL, 2017 WL 6566141, at *2 (E.D. Tenn. Dec. 22, 2017)

("The parties' minds met in mutual assent to the terms, as evidenced by [the plaintiff]'s signature, his counsel's signature, and the signature of counsel for the [defendant] . . . .").

### 3. Mistake

Plaintiff attributes the absence of a term from the settlement agreement to a mutual mistake. The mistake, as made evident in Plaintiff's filings and in his argument at the hearing, is that Plaintiff understood that the term missing from the settlement agreement would be contained in a document to be drafted thereafter.[2] Plaintiff characterized the mistake as an honest mistake, based on human imperfection, but at the same time acknowledged that Defendants might have had a different understanding of what was included in the settlement agreement. Clearly, Plaintiff's characterization of the claimed mistake as a mutual mistake is at odds with his explanation as which party made the mistake. Plaintiff has not alleged the elements of a mutual mistake. *See Robinson v. Brooks*, 577 S.W.2d 207, 209 (Tenn. Ct. App. 1978) (providing that the mistake, *inter alia*, must have been mutual, material, and not due to the challenging party's negligence). The Court finds that Plaintiff, in actuality, is asserting that the settlement agreement is void and unenforceable based on his unilateral mistake.

As noted, a court applying Tennessee law may modify a contract based on unilateral mistake, if the other party induced the mistake. *See Peatross*, 2009 WL 2922797 at *5. Here, there is no contention of fraudulent misrepresentation by Defendants Heidel or SHP and no viable claim of unilateral mistake. *Zion Hill Baptist Church v. Taylor*, No. M2002-03105-COA-R3CV,

---

[2] It was difficult to discern from Plaintiff's arguments in his pleadings whether he anticipated that the release of claims Defendants agreed to prepare would contain an additional term not contained in the settlement agreement or whether a formal settlement agreement, rather than the settlement agreement at issue here [Doc. 86, sealed], would be forthcoming. At the hearing, Plaintiff identified the formal release of claims as the forthcoming document to which he referred.

2004 WL 239760, at *3 (Tenn. Ct. App. Feb. 9, 2004) ("[I]t is well-settled that a unilateral mistake alone by one party is insufficient for invalidating an agreement; it must be coupled with or induced by the fraud or inequitable conduct of the other party.").

While Plaintiff argued that the mistake was not unilateral because Plaintiff's intent was different from Defendants', the plain and clear language in the settlement agreement controverts Plaintiff's understanding of the terms of that agreement, which renders his understanding of the terms of the agreement unreasonable. *See Burks v. Belz-Wilson Props.*, 958 S.W.2d 773, 777 (Tenn. Ct. App. 1997) ("[T]he court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written."). The Court concludes that the settlement agreement is not voidable due to mistake and cannot be set aside because of any mistake.[3]

### 4. Ambiguity

The ambiguity, so posits Plaintiff, is that the parties agreed that Defendants' counsel would prepare a formal mutual release of all claims to be executed by the parties and that this part of the settlement agreement was susceptible to an interpretation that a fuller document with more terms would be forthcoming. Plaintiff viewed the settlement agreement as preliminary, not fully encompassing what was discussed at the settlement conference, and he believed that a formal agreement would be turned in two days later.

---

[3] Plaintiff characterized copies of a stream of emails exchanged between his counsel, the mediator, and Defendants' counsel that he submitted to support his request to set aside the settlement agreement as objective acts that demonstrated the lack of a meeting of the minds and the existence of a mutual mistake [Doc. 88, sealed]. However, as conceded by the parties at the hearing, the emails contained confidential information about the mediation conference that cannot be divulged to the Court without the parties' consent. *See* E.D. Tenn. L.R. 16.4(h). The parties did not consent and, therefore, the emails will not be considered by the Court.

Notably, the settlement agreement is labeled, in all capital letters, "SETTLEMENT AGREEMENT," and it does not identify the settlement agreement as preliminary nor does it specify that a future "formal" settlement agreement will be drafted. The settlement agreement contains no conditional terms, such as "subject to" or "conditioned on." In clear and unambiguous terms, the settlement agreement is a mutual release of the claims of the parties against one another and constitutes the final settlement of claims as to those parties.

Moreover, the term "mutual release" is defined as "[a] simultaneous exchange of releases of legal claims held by two or more parties against each other." *Release*, *Black's Law Dictionary* (10th ed. 2014). The subject matter of the mutual release part of the settlement agreement consists of all claims that the parties raised or could have raised against each other. Thus, the settlement agreement clearly and unambiguously expresses the scope of the mutual release and admits of no expansion to include a term that was not contained in the settlement agreement.

Finally, Plaintiff argues that the parties promptly were to prepare and execute a formal mutual release after the settlement agreement was signed and that this impending document renders the settlement ambiguous. This argument is not well founded and the Court rejects it. *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012) (rebuffing contention that a settlement agreement was unenforceable "because it was subject to execution of more formal documentation").

The Court therefore concludes that the settlement agreement is clear and unambiguous.

5. **Consideration**

Plaintiff's assertion that there was a lack of consideration likewise fails because the settlement agreement on its face contains provisions showing consideration. Consideration is present when one party abstains from doing something he is legally entitled to do. *Bratton*, 136

11

S.W.3d at 597. Because "[m]utual promises are sufficient consideration," *Id.* at 602, and because the settlement agreement contains such mutual promises to release claims, the settlement agreement includes adequate consideration to be enforceable.

### III. CONCLUSION

The Court finds that, for the above reasons, Plaintiff has not borne his burden of showing that the settlement agreement is unenforceable, that the settlement agreement is valid and enforceable, and that the dispositive motion filed by Defendants Heidle and SHP should be granted.

To sum up what the Court is ordering:

(1) Plaintiff's request to set aside the settlement agreement [Doc. 88, sealed] is **DENIED**;

(2) The motion for partial final judgment filed by Defendants Heidel and SHP [Doc. 84] is **GRANTED** based on the mediated settlement agreement; and

(3) A separate final judgment will enter pursuant to Rules 54(b) and 58 of the Federal Rules of Civil Procedure, there being no just reason for delay.

**ENTER:**

                                                s/J. RONNIE GREER
                                         UNITED STATES DISTRICT JUDGE